Don L. DYER, Appellant,

v.

SHAFER, GILLILAND, DAVIS,
McCOLLUM & ASHLEY, INC.,
and Jim Moseley, Appellees.

No. 08–89–00048–CV.

Court of Appeals of Texas,
El Paso.

Oct. 4, 1989.

Rehearing Denied Nov. 1, 1989.

Richard N. Countiss, Law Offices of Windle Turley, Dallas, for appellant.

Brad Crawford, Cecil Kuhne, Crenshaw, Dupree & Milam, Lubbock, for appellees.

Before OSBORN, C.J., and FULLER and WOODARD, JJ.

## OPINION

WOODARD, Justice.

This is an appeal from a summary judgment entered in favor of Appellees/Defendants in a legal malpractice suit. We affirm.

■ There is a Motion to Strike Supplemental Transcript which contains depositions taken in this case that were not authenticated and attached to the Motion for Summary Judgment, nor filed before the entry of judgment. They are not properly part of the record, and the Motion to Strike Supplemental Transcript is granted. *Deerfield Land Joint Venture v. Southern Union Realty Company,* 758 S.W.2d 608 (Tex. App.—Dallas 1988, no writ).

In the late 1970's, Appellant Dyer and Phillip Graves formed various corporate business entities that were related to safety means and procedures in the oil fields. Contemporary with these creations, Dyer and Graves also formed a real estate investment partnership which acquired a lease-purchase agreement on certain land and buildings that was in turn leased back by them to the primary corporation, Safety International, Inc. In 1981, Dyer and Graves decided to dissolve their business relationship and go their separate ways. They employed the firm of the Appellees to formalize their separation agreement.

The agreement provided that Dyer was to transfer all of his corporate stock to Graves. Graves agreed to pay Dyer $200,000.00 over a four-year period beginning January 1, 1982. Graves was to transfer certain partnership realty to Dyer. Graves further agreed to join with Dyer in the exercise of a partnership option to purchase the office space that had been leased to the primary corporation, and then transfer all his interest to Dyer. The improvements the corporation had made had increased the value of that property substantially. Their primary corporation was to pay Dyer $15,000.00 monthly until the purchase was complete, and then continue to pay that sum to Dyer as monthly rental. Dyer also covenanted not to compete with the corporate businesses for seven years.

■ In November, 1982, coincidentally with the Permian Basin oil industry collapse, the primary corporation entered into bankruptcy. This corporation then proceeded in the bankruptcy court to petition Dyer for the $135,000.00 he had received under the $15,000.00 monthly payments made under the buy out agreement. The grounds were that it made Dyer a prohibited preferential creditor under the bankruptcy laws because payments were made on account of an antecedent debt, and that they were made while the debtor corporation was insolvent. In addition, Dyer and Graves were petitioned to turn over their partnership option to purchase the realty to the corporation as it was acquired in violation of the corporate opportunity doctrine. Pursuant to this doctrine, any interest acquired by an officer or director in violation of his fiduciary duty to the corporation is charged with a trust of that interest for the benefit of the corporation. This latter matter was severed from the first. It was found to be a usurpage of corporate opportunity by the bankruptcy court and the district court, but these decisions were reversed by the United States Fifth Circuit Court of Appeals. Following this reversal, Dyer and the corporation entered into a compromise and settlement agreement. Dyer received the optioned realty, but was to pay $100,000.00 to the corporation if he sold the property before January 1, 1990, and was to pay that sum plus interest, in monthly installments, if sold afterward. These payments were to represent restitution of the monies Dyer had received from the corporation under the original separation agreement.

Dyer then brought the present suit alleging that the claims asserted against him by the corporation in the bankruptcy proceedings were the direct result of the law firm's failure to draft a competent agreement. Dyer alleged that the firm was guilty of malpractice and of violating the Deceptive Trade Practices Act in the manner in which the agreement was drawn.

The first point of error contends the trial court based its judgment on inadmissible hearsay evidence. The portions of depositions objected to were attached to the Motion for Summary Judgment. In Appellant's response to the motion, a general objection without specifying a reason was made to all depositions from the bankruptcy court. An attempt to enlarge that objection is made here by arguing the depositions consist of "(statement other than one made by the declarant while testifying ... offered in evidence to prove the truth of the matter asserted)" [sic]. Issues not expressly presented to the trial court may not be considered on appeal as grounds for reversal of a summary judgment. *State Board of Insurance v. Westland Film Industries*, 705 S.W.2d 695 (Tex.1986). An objection must state a specific ground unless the ground was apparent from the context. Tex.R.Civ.Evid. 103(a)(1). A general objection to a unit of evidence as a whole, which does not point out specifically the portion objected to, is insufficient. *Speier v. Webster College*, 616 S.W.2d 617 (Tex.1981). Deposition testimony constitutes competent summary judgment evidence. *Richards v. Allen*, 402 S.W.2d 158 (Tex.1966). This would be true even if the depositions were taken in another case before other parties as they are sworn testimony and as reliable, if not more reliable than an ex parte affidavit offered into summary judgment evidence. Point of Error No. One is overruled.

Points of Error Nos. Two through Eight advocate the movant failed to negate the elements of the Appellant's malpractice claim. A defendant must show that at least one element of the plaintiff's cause of action has been established conclusively against the plaintiff. *Gray v. Bertrand*, 723 S.W.2d 957, 958 (Tex.1987).

An action against an attorney for malpractice is a claim based upon negligence. The elements of the cause of action are the same as with any other negligence case: The plaintiff must prove a duty owed to him by the defendant, a breach of that duty, injury proximately caused by the breach and damages. A lawyer in Texas is held to the standard of care which would be exercised by a reasonably prudent attorney, based on the information the attorney has at the time of the alleged act of negligence. *Cosgrove v. Grimes*, 32 Tex.Sup. Ct.J. 334 (April 19, 1989).

Appellant alleged that the law firm was negligent in drawing an agreement that was not immune from attack, and that it should have made the $15,000.00 monthly payments of the corporation to Dyer payable by Graves, or provide that the corporation received Dyer's shares of stock in consideration for corporate assets.

The original transaction involved an execution of a five-year lease of the office space from the owner to the corporation. Concurrently, Dyer and Graves agreed to personally guarantee the lease in exchange for the option to buy the building, at a progressively decreasing price, anytime during the lease period. Thereafter, in addition to its monthly rental payments, the corporation made $200,000.00 worth of improvements to the building. Neither Dyer nor Graves spent any personal funds in connection with the building.

When Dyer acquired full interest in the lease purchase option and Graves acquired all of the corporate stock per the agreement, the corporation was solvent, having a net worth of $711,852.22.

Texas corporation law applies the "corporate opportunity" doctrine where a corporation has a legitimate interest or expectancy in, and the financial resources to take advantage of, a particular business opportunity. When a corporate officer or director diverts a corporate opportunity to himself, he breaches his fiduciary duty of loyalty to the corporation. A nonconsenting shareholder may challenge the breach of fiduciary duty. Similarly, creditors may challenge the breach if the transaction is made to defraud creditors or while the corporation is insolvent. In such cases, a court in equity may find that the officer or director holds the usurped opportunity as constructive trustee for the corporation. *In the Matter of Safety International, Inc.*, 775 F.2d 660 (5th Cir.1985).

Nevertheless, as with other acts involving interested directors, the shareholders of the corporation ordinarily can ratify the transaction; the ratification is valid unless the transaction itself violates a statute or public policy. Assuming fairness to the corporation and full disclosure of the director's action, only a majority vote is necessary. Yet, even when the transaction is detrimental to the corporation, no cause of action will lie if all of the shareholders have ratified the transaction. *Id.*

The United State's Fifth Circuit Court of Appeals found in this case that the facts did not warrant the imposition of a constructive trust. Their opinion stated:

> Even if Dyer and Graves breached their fiduciary duty to (the corporation) Safety by taking the purchase option in their own names, no party to this action can complain of the breach. There are no nonconsenting shareholders; Dyer and Graves held all of the shares of Safety. Moreover, although no formal shareholder action was taken, both were fully aware of their private ownership of the purchase option. Thus, their January 1982 agreement constituted informal ratification of the potential breach, foreclosing action by the corporation. Furthermore, the rights of Safety's creditors were not violated. Since the option never appeared as an asset on the company's books, creditors could not have relied on its existence in deciding to transact business with Safety. The challenged transaction did not cause Safety's subsequent Chapter II filing; rather, the insolvency resulted from later, wholly unrelated economic conditions. Moreover, the bankruptcy court specifically stated that no fraud was involved.

We agree with that Court's analogy and adopt its opinion as it applies to the matters before us. We also are cognizant of the doctrines of collateral estoppel and res judicata. Appellees did not violate a duty to the Appellant by failing to recognize a violation of the doctrine of corporate opportunity.

In a negligence case, foreseeability is satisfied by showing that the actor, as a person of ordinary intelligence, should have anticipated the danger to others by his negligent act. *McClure v. Allied Stores of Texas, Inc.*, 608 S.W.2d 901 (Tex.1980). It is not reasonable for the Appellees to have predicted the corporation's bankruptcy. If Graves had become the payor of the indebtedness, his insolvency would have been theoretically equally possible. It was a consideration to the corporation for it to make the rental payments as it would receive tax deductions that it would not have otherwise received by purchasing its own stock or buying and reselling the office property. The corporation, as well as Graves, benefited by Dyer's covenant not to compete. It further retained a continual place of business out of the agreement. Appellant argues the agreement should have been altered so that certain corporate assets were transferred to Dyer in consideration for his sale of his shares of stock back to the corporation. The parties had already formed their agreement. It was not the attorney's duty to modify the bargained terms or prevent Dyer from obtaining the property he wanted. Points of Error Nos. Two through Seven are overruled.

With the disposition of Points of Error Nos. Two through Seven, Points Eight through Fourteen are rendered inconsequential and overruled.

Point of Error No. Fifteen concludes the trial court erred in granting a summary judgment based upon a pleading defect as condemned in *Texas Department of Corrections v. Herring*, 513 S.W.2d 6 (Tex.1974). Appellees moved for summary judgment on several grounds, including an allegation that Appellant had failed to allege a cause of action. The trial court granted the summary judgment on the grounds that there was no genuine issue as to any material fact with respect to the claims asserted. When a summary judgment order does not state the specific grounds upon which it is granted, a party appealing from such order must show that each of the independent arguments alleged

in the motion is insufficient to support the order. *Tilotta v. Goodall,* 752 S.W.2d 160, 161 (Tex.App.—Houston [1st Dist.] 1988, writ denied). Point of Error No. Fifteen is overruled.

■■■■ Point of Error No. Sixteen alleges trial court error in granting the summary judgment in disregard to evidence that the Appellees violated DR 5–105(B) of the Texas Code of Professional Responsibility, Tex.Gov't.Code Ann. Title 2, Subtitle G–App., art. 10, sec. 9 (Vernon 1988), which provides:

> A lawyer shall not continue multiple employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by his representation of another client, except to the extent permitted under DR 5–105(C).

Appellees merely formalized an existing agreement in which all parties desired and agreed to. There were no conflicting interests at the time of the agreement. Discordance did not arise until after the bankruptcy. Furthermore, a violation of state bar rules does not create a private cause of action. *Blanton v. Morgan,* 681 S.W.2d 876, 878, 879 (Tex.App.—El Paso 1984, writ ref'd n.r.e.), *Martin v. Trevino,* 578 S.W.2d 763, 770 (Tex.Civ.App.—Corpus Christi 1979, writ ref'd n.r.e.). Point of Error No. Sixteen is overruled.

Point of Error No. Seventeen asserts that the cause of action under the Deceptive Trade Practices—Consumer Protection Act was not negated. It was alleged that the Appellees, (1) breached their implied warranty to perform services in a good and workmanlike manner in failing to correctly draft the contract, and (2) engaged in unconscionable conduct by failing to disclose their conflict of interest.

■■■ Professional conduct is not included within the implied warranty provisions of the DPTA. *Willis v. Maverick,* 760 S.W.2d 642, 647 (Tex.1988). The question of failure to disclose any conflict of interest has been discussed and decided under Point

of Error No. Sixteen. Point of Error No. Seventeen is overruled.

Judgment of the trial court is affirmed.