**ICOM SYSTEMS, INC., Appellant,**

v.

**Peter DAVIES, individually and d/b/a Interactive Promotions, Appellee.**

**No. 06–98–00080–CV.**

Court of Appeals of Texas,
Texarkana.

Submitted Feb. 25, 1999.

Decided March 24, 1999.

B. Prater Monning III, Phyllis Elaine Lambert, Dallas, for appellant.

Lloyd Eugene Ward, Lloyd Ward & Associates, P.C., Dallas, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

CORNELIUS, Chief Justice.

Icom Systems, Inc. appeals from a take-nothing judgment rendered against it in its suit against Peter Davies. Icom sued Davies, its former officer and director, alleging that he breached his fiduciary duty by usurping a corporate opportunity. On appeal, Icom contends that the evidence is legally and factually insufficient to support the trial court's judgment.

In 1989, Peter Davies, Joseph Dillingham, and Forres McGraw formed Icom Systems, Inc. Davies was to manage the day-to-day operations, Dillingham provided the software for the system, and McGraw provided the accounting services. All three men were directors and owned most of the company's stock.

Icom was formed for the purpose of creating and marketing an interactive computer system for the management and scheduling of tee times for golf courses. Icom's initial product was the Telephone Interactive Golf Reservation Exchange (TIGRE). This system consisted of computer software that would interface with conventional computer input devices by telephone through communications boards or other similar communications devices. TIGRE was later expanded to include reservation times for tennis facilities.

Dillingham sold Icom his rights to the software he developed for the TIGRE system in exchange for a royalty and shares in Icom. The sale was accomplished by execution of a Bill of Sale and Assignment Agreement, which also provided that any future products for markets other than golf that might be developed by Dillingham based on the same technology would be placed under a similar agreement and would become supplemental to the original agreement. Icom subleased office space and began selling and installing the TIGRE golf reservation systems.

In June of 1991, Davies formed Interactive Promotions, Inc. He was the sole shareholder. Interactive Promotions contracted to provide a point of purchase display software program to Green Light Company called the Garden Professor. Green Light produced lawn and garden supplies and chemicals. Garden Professor allowed a customer, using a number pad, to answer certain questions and correctly determine the needs of his lawn. Davies was still the managing director for Icom when he initiated the agreement with Green Light. He used Icom's computers and telephones to correspond with Green Light. Davies also hired an independent software developer, Joe Wilham, to develop the Garden Professor.

On February 11, 1993, Davies resigned as an officer and director of Icom. Dillingham resigned two weeks later. McGraw, as sole remaining director, brought suit on behalf of Icom against Davies for breach of fiduciary duty.

After a trial to the bench, the trial court rendered a take-nothing judgment against Icom. In its findings of fact and conclusions of law, the trial court concluded,

among other things, that Davies had not breached his fiduciary duty to Icom, and that the Garden Professor was not in Icom's line of business and therefore was not a corporate opportunity of Icom.

Icom challenges the legal and factual sufficiency of the evidence to support the trial court's findings as to whether Davies breached his fiduciary duty. Where a party challenges the legal sufficiency of an adverse finding on an issue on which he had the burden of proof, he must demonstrate that the evidence conclusively established all vital facts in support of the issue. *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex.1989); *Estate of Townes v. Townes*, 867 S.W.2d 414, 417 (Tex.App.-Houston [14th Dist.] 1993, writ denied). In reviewing a matter of law challenge, we must first examine the record for evidence that supports the finding, while ignoring all evidence to the contrary. *Sterner v. Marathon Oil Co.*, 767 S.W.2d at 690. If there is no evidence to support the finding, we must then examine the entire record to determine if the contrary proposition is established as a matter of law. *Id.* If a party is attacking the factual sufficiency of an adverse finding on an issue on which he had the burden of proof, he must demonstrate that the adverse finding is against the great weight and preponderance of the evidence. *Hickey v. Couchman*, 797 S.W.2d 103, 109 (Tex.App.-Corpus Christi 1990, writ denied). As plaintiff, Icom had the burden of proof to establish that Davies breached his corporate fiduciary duty.

■■■ To establish a breach of a fiduciary duty by usurping a corporate opportunity, the corporation must prove that an officer or director misappropriated a business opportunity that properly belongs to the corporation. *International Bankers Life Ins. Co. v. Holloway*, 368 S.W.2d 567, 576–78 (Tex.1963); *Alexander v. Sturkie*, 909 S.W.2d 166, 169 (Tex.App.-Houston [14th Dist.] 1995, writ denied). The business opportunity arises where a corporation has a legitimate interest or expectancy in, and the financial resources to take advantage of, a particular business opportunity. *Dyer v. Shafer, Gilliland, Davis, McCollum & Ashley, Inc.*, 779 S.W.2d 474, 477 (Tex.App.-El Paso 1989, writ denied).

The analysis, then, turns on determining the corporate interest or expectancy. The Tyler Court of Appeals, in *Imperial Group (Texas), Inc. v. Scholnick*, 709 S.W.2d 358, 365 (Tex.App.-Tyler 1986, writ ref'd n.r.e.), embraced the "in the line of business" test to determine if a corporate officer had usurped a corporate opportunity. The court found,

> Where a corporation is engaged in a certain business, and an opportunity is presented to it embracing an activity as to which it has fundamental knowledge, practical experience and ability to pursue, which, logically and naturally, is adaptable to its business having regard for its financial position, and is one that is consonant with its reasonable needs and aspirations for expansion, it may be properly said that the opportunity is in the line of the corporation's business.

*Id.* (citing *Guth v. Loft*, 23 Del.Ch. 255, 5 A.2d 503 (1939)). The test is flexible and fact sensitive. *Id.*

The corporate opportunity rule is but a means to test the conduct of the fiduciary regarding the requirements cast on him of "utmost good faith in his relations to the corporation he represents." *Imperial Group (Texas), Inc. v. Scholnick*, 709 S.W.2d at 363. In *Johnson v. Peckham*, 132 Tex. 148, 120 S.W.2d 786, 787 (1938), the court said, "[E]ach is required to make full disclosure of all material facts within his knowledge in any way relating to the partnership affairs." The same principles of law apply to the fiduciary duties of corporate directors and officers that apply to partnerships. *Huffington v. Upchurch*, 532 S.W.2d 576, 579 (Tex.1976).

■■ After reviewing the evidence in the light most favorable to the verdict, we conclude that some evidence exists to support the judgment in favor of Davies. Davies introduced evidence that the Garden

Professor was not in the line of Icom's business. Accordingly, we overrule Icom's legal sufficiency point.

To conduct a factual sufficiency review, we examine all the evidence in the record. The evidence that tends to support Davies' contention that he did not usurp a corporate opportunity includes his own testimony that he disclosed the facts about Interactive Promotions to the other shareholders, and informed them about the Garden Professor. Icom was formed for the sole purpose of creating and marketing the TIGRE computer system. The directors of Icom never discussed the development of new products. The Garden Professor and TIGRE are dissimilar products that do not compete in the same market. No resource of Icom was used to develop the Garden Professor. Davies hired an independent consultant to write the Garden Professor software. The independent consultant picked the computer language in which the Garden Professor was written. The Bill of Sale and Assignment Agreement includes only other software packages developed by Dillingham, and the Garden Professor was not developed by Dillingham. Davies had produced a similar software package for the Garden Professor in 1985 while working as an independent contractor. For several months before Davies resigned from Icom, he and Interactive Promotions were completely supporting Icom and paying all its expenses.

The evidence supporting Icom's contention that the Garden Professor was in its line of business includes McGraw's assertion that he was not aware that Interactive Promotions was producing the Garden Professor. Icom was in the business of designing interactive systems for computers. An interactive computer system is a computer program that makes use of the computer for those entering information in or getting information from the computer. The Garden Professor was an interactive computer system. The Bill of Sale and Assignment that the directors signed an-ticipated that new products produced by Dillingham would be covered under the agreement. The TIGRE system was expanded to include tennis court reservations as well as tee time reservations. Davies had dinner with Sid Hilburn, Icom's landlord, to discuss the Garden Professor, and the expenses of the meeting were billed to Icom's account. Interactive Promotions was doing business out of the same office as Icom and corresponded with Green Light using Icom's office equipment. Icom was paying for phone calls Davies made to Green Light. Interactive Promotions was not in existence at the time the meeting between Sid Hilburn and Davies took place. A portion of the Garden Professor software was stored on Icom's computer under the file name ICOM000.PRG.

After carefully considering all the evidence in the record, we find that the trial court's judgment is not so against the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. There is evidence on both sides of the question. We may not substitute our opinion for that of the trier of fact merely because we might have reached a different conclusion. *Benoit v. Wilson,* 150 Tex. 273, 239 S.W.2d 792, 796 (1951). The trier of fact is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *See id.* As the trier of fact, the trial court was free to believe or disbelieve any witness, regardless of whether the witness's testimony is later controverted. We cannot say that the evidence is factually insufficient or against the great weight.

In a counter point, Davies argues that Icom's brief is procedurally defective because its points of error do not directly attack the trial court's findings of fact or conclusions of law. When findings of fact are filed and are unchallenged, as here, they occupy the same position and are entitled to the same weight as the verdict of a jury. *McGalliard v. Kuhlmann,* 722 S.W.2d 694, 696 (Tex.1986). They are

binding on an appellate court unless the contrary is established as a matter of law, or if there is no evidence to support the finding, or the finding is against the great weight and preponderance of the evidence. *Id.* However, after reading Icom's brief, we find that it is apparent that Icom attacks the trial court's findings of fact and conclusions of law. Throughout its brief, Icom makes legal and factual sufficiency arguments.

For the reasons stated above, we affirm the judgment.