NO. 07-05-0258-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

JULY 13, 2006
_____

GRACE EMILY ARCHER, M.D.,

Appellant

v.

THE MEDICAL PROTECTIVE COMPANY OF FORT WAYNE, INDIANA
and MEDICAL INSURANCE SERVICES, Individually and d/b/a THE
MEDICAL PROTECTIVE COMPANY OF FORT WAYNE, INDIANA, CHARLES
E. MOSS and PETERSON, FARRIS, MOSS, PRUITT & PARKER, P.C. f/k/a
PETERSON, FARRIS, DOORES & JONES, P.C.,

Appellees
_____

FROM THE 108TH DISTRICT COURT OF POTTER COUNTY;

NO. 91,411-E; HON. ABE LOPEZ, PRESIDING
_____

*Opinion*
_____

Before QUINN, C.J., and REAVIS and HANCOCK, JJ.

The appeal before us involves intriguing questions. That of primary importance concerns the effect, if any, of a judgment absolving an insured of liability for negligence upon the extra-contractual duties owed by the insurer to its insured. Here, Grace Emily Archer, M.D. stood as the insured. Medical Protective Company (MPC) was her insurer.

Moreover, Archer was sued by one of her patients for medical malpractice. Prior to trial, the patient supposedly offered to settle the litigation for a sum within policy limits. MPC allegedly refused to settle. Thereafter, a jury found Archer had committed malpractice and awarded damages exceeding her policy limits. The trial court entered judgment upon the verdict, which judgment Archer appealed. Eventually, this court reversed the judgment and rendered its own judgment absolving Archer of liability. Thereafter, Archer sued both MPC, her trial counsel (Charles Moss), and counsel's law firm (Peterson, Farris, Moss, Pruitt & Parker, P.C.) to recover for damages purportedly relating to their failure to settle the underlying medical malpractice cause before trial.[1] After the trial court granted the summary judgment motions of MPC, Moss and his law firm, Archer appealed.

Before us, Archer contends that our decision absolving her of liability in the underlying medical malpractice case had no effect upon her claims against her insurer and counsel. Nor were her claims time barred. Upon reviewing the contentions of all involved, we affirm the summary judgment in part and reverse and remand it in part.

*Issue One – Stowers*

It is beyond doubt that an insured can sue his insurer for negligently failing to settle a third party's claim against the insured. *Trinity Universal Ins. v. Bleeker*, 966 S.W.2d 489, 491 (Tex. 1998); *see G.A. Stowers Furn. Co. v. American Indem. Co.*, 15 S.W.2d 544, 547 (Tex. Comm'n App. 1929, holding approved) (stating that an insurance company is held to that degree of care and diligence which an ordinarily prudent person would exercise in the management of his own business, and if an ordinarily prudent person, in the exercise

---

[1]Medical Protective Insurance Services, Inc. was also sued. However, for purposes of this opinion, both it and Medical Protective Company are referred to as and encompassed by the moniker MPC.

2

of ordinary care, as viewed from the standpoint of the insured, would have settled the case, then the insurer may be liable in damages if it did not). So too is it true that, as a matter of law, an insurer who refuses to settle a claim within its policy limits before trial is not negligent if its insured is absolved of liability for the underlying claim. *Nationwide Mut. Ins. Co. v. Holmes*, 842 S.W.2d 335, 338-39 (Tex. App.–San Antonio 1992, writ denied). In other words, if X sued Y and offered to settle the claim for a sum within the limits of Y's insurance policy with Z, Z is not subject to *Stowers* liability if Y is absolved of responsibility for the alleged injuries of X. The insurer, as a matter of law, has not acted negligently, or unreasonably, under those circumstances. *Id.* And, those are the circumstances we have here.

Though a jury found Archer liable to her patient and judgment was entered upon its verdict, this court reversed the decree. *See Archer v. Warren,* 118 S.W.3d 779 (Tex. App. – Amarillo 2003, no pet.). So too did we render judgment denying the patient recovery against Archer. Consequently, Archer was absolved of liability, and, per *Nationwide,* that effectively insulated MPC from any purported *Stowers* claim arising from its refusal to settle the cause prior to trial. Furthermore, the assertions of Archer to the contrary do not change this outcome.

While it may be that the rendition of a final judgment may give rise to damages, *see e.g., Street v. Honorable Second Court of Appeals*, 756 S.W.2d 299, 301 (Tex. 1988) (so acknowledging), that alone is not enough to warrant the imposition of liability. Indeed, one may suffer injury even though no one else was negligent. *See Carter v. Steere Tank Lines, Inc.,* 835 S.W.2d 176, 186-87 (Tex. App.–Amarillo 1992, writ denied) ( Boyd, J.,

concurring) (stating that the "pertinent question . . . is not whether an accident could or did result, but whether an accident was reasonably foreseeable. However tempting it might be to apply a 'can and did test,' to do so would be to replace foreseeability with hindsight"). So, simply because Archer may have been injured by the rendition of a final judgment, that alone does not mean MPC breached any duty imposed upon it by *Stowers*. And, it is the absence of a breached duty (given our reversal of the underlying judgment) that posed the insurmountable obstacle here.

Moreover, our interpretation of the *Stowers* doctrine is supported by the very case Archer relied upon. In *Street*, *supra*, the Supreme Court did acknowledge that to the extent a judgment is not superseded, the presence and enforcement of the judgment may cause injury. *Street v. Honorable Second Court of Appeals*, 756 S.W.2d at 301. Yet, it also opined that limitations applicable to a *Stowers* claim did not begin to run "until *all* appeals have been exhausted." *Id.* at 302 (Emphasis added). "Regardless of whether the judgment is superseded, an insured who wishes may still wait until the underlying action has been completely resolved before bringing a *Stowers* suit," the court continued. *Id.* This was so because "[n]o valid public policy is served by forcing an insured to bring an action which *may ultimately prove unnecessary.*" *Id.* (Emphasis added). The latter passage is quite telling, especially when coupled with the pronouncement that limitations do not accrue until "all" appeals have ended. Together, they reveal that while one need not await until all appeals have ended to sue, all the elements to an enforceable *Stowers* claim have yet to accrue while appeals remain pending. If this were not so, then the

4

Supreme Court had no basis upon which to say that limitations do not begin to run until the disposition of all appeals.

Simply put, limitations begin to tick when a claim accrues. *Moreno v. Sterling Drug, Inc.,* 787 S.W.2d 348, 351 (Tex. 1990). And, a claim accrues upon there arising a breached duty causing legal injury. *Deloitte & Touch v. Weller,* 976 S.W.2d 212, 215 (Tex. App.– Amarillo 1998, pet. denied). If that point were to occur, *viz* a *Stowers* claim, upon entry by the trial court of a final judgment, the limitation would begin to run at that point. So, if limitations do not begin until all appeals are over, then, logically, the claim has yet to accrue while appeals remain pending. Moreover, we conclude that the missing element is that of a breached duty for it cannot be the presence of an injury given the language in *Street* acknowledging that the entry of a judgment itself causes injury.[2]

In sum, because Archer eventually won the underlying suit initiated by her patient, she had no *Stowers* claim against MPC. So, the trial court did not err in entering a summary judgment favoring the insurer.

*Issue Two – Unfair Settlement Practices/Breached Duty to Negotiate Settlement*

Archer also asserts that the trial court erred in granting summary judgment upon her claims against MPC involving unfair settlement practices and breached duty to negotiate a settlement. Both causes of action were addressed in MPC's motion for summary judgment. Moreover, both were founded upon the same allegations underlying her *Stowers* claim. Simply put, Archer contended that MPC had a duty to reasonably negotiate

---

[2]This, in turn, leads us to answer the question of when "may [a *Stowers* claim] ultimately prove unnecessary" while the underlying suit remains on appeal by saying that it must be when the insured is absolved of liability via a decision of the appellate court.

5

and settle the suit for a sum within the $200,000 policy limit. We overrule the contention for the reasons mentioned in overruling her *Stowers* contention. Our having rendered a judgment in Archer's favor in the underlying suit, we hold, as a matter of law, that MPC breached none of the duties implicit in the two causes of action.

*Issue Three – Breach of Contract and Aiding and Abetting*

Next, Archer contends that the trial court erred in granting summary judgment on her claims against MPC for breached contract and aiding and abetting her attorney's various breaches of duty. It so erred, she continues, because neither claim was encompassed within the motion for summary judgment. Yet, in its motion, MPC averred that it was "entitled to judgment as a matter of law *on all causes of action* alleged by" Archer. (Emphasis added). And, it believed itself so entitled because we reversed and rendered judgment for Archer in the underlying suit. Given MPC's use of the phrase "on all causes of action" when propounding the grounds for its summary judgment and the plain meaning of the word "all," we cannot but disagree with Archer's contention. The allegations of breached contract and aiding and abetting were indeed covered. Thus, we overrule this issue as well.

*Issue Four – Legal Malpractice*

In this issue, Archer contends that the trial court erred in entering summary judgment for her trial counsel and his firm (collectively referred to as Moss). We sustain the issue in part and overrule it in part.

Three causes of action had been asserted against Moss. They were claims for legal malpractice, breach of fiduciary duty, and breach of the duty to act in good faith and deal

6

fairly. Furthermore, the claims were based upon counsel's 1) neglecting a legal matter, 2) failing to "carry out completely the obligations . . . owed to Archer, including but not limited to failing to adequately evaluate the case and . . . communicate to Archer the same information . . . communicated to" MPC, and 3) failing to "represent Archer's interests notwithstanding the interests of [MPC] in a situation in which the representation of Archer was adversely limited by [counsel's] own interests in keeping the business and favor of" MPC.

In addressing each of the aforementioned allegations, Moss accused Archer of simply splitting one claim into the three different causes of action. Her sole complaint, in his view, was nothing more than a claim for legal malpractice. This theme framed the parameters of his motion for summary judgment (as well as his appellate brief wherein he posited that her "claims for breach of fiduciary duty are in reality nothing more than claims for legal negligence that Archer should not be permitted to fracture"). In other words, the grounds alleged in the summary judgment motion referred to the malpractice action, as opposed to the choses sounding in breached fiduciary duty. Additionally, those grounds were limitations, the lack of causation, and the effect of our prior decision reversing and rendering judgment in the underlying suit between Archer and her patient.

Yet, our interpretation of the record and Archer's pleadings differs from that of Moss. We agree that under Texas law, a plaintiff cannot fracture a legal malpractice claim into multiple causes of action. *Aiken v. Hancock*, 115 S.W.3d 26, 28 (Tex. App.–San Antonio 2003, pet. denied). We also acknowledge that the allegations of misdoing in Archer's live pleading were somewhat spartan. Nonetheless, they easily can be divided into two categories. The first concerns the quality of Moss' performance, *e.g.,* his neglecting

7

matters, mis-evaluating the case, and omitting to communicate with his client. So concerned, they can be viewed as claims involving legal malpractice. *See id.* at 28 (noting that the thrust of a legal malpractice claim involves the adequacy of counsel's representation). The second concerns a matter of divided loyalties, *e.g.*, the pursuit of his own pecuniary interests over the interests of his client. So focused, they can be viewed as claims involving breached fiduciary duties. *See Aiken v. Hancock*, 115 S.W.3d at 28 (noting that claims of breached fiduciary duties involve conflicts of interest, self-dealing, the use of confidential information, among other things). Given that her allegations can be so classified, we cannot say that she impermissibly fractured one malpractice claim into multiple causes of action.

Next, with regard to the malpractice claims, Moss attempted to defeat them via summary judgment by alleging that they were negated by the reversal and rendition of the judgment in the underlying suit between Archer and her patient. So too did he contend that limitations, the lack of a sufficient causal relationship, and the want of any "reasonable possibility of recovery under any state law claims" also defeated her causes of action. Also alleged was that our reversal and rendition of the underlying judgment established that Moss "conformed to the standards set by the legal profession."

Now, in granting summary judgment, the trial court specified no particular ground upon which it relied. Thus, it was encumbent upon Archer to illustrate why none supported the trial court's decision. *Pruett v. City of Amarillo,* 947 S.W.2d 718, 720 (Tex. App.–Amarillo 1997, writ denied). Thus, for instance, she was obligated, on appeal, to show why our reversal of the underlying judgment did not establish that Moss' conduct

8

conformed to the performance standards required of lawyers as a matter of law. Instead of doing so, however, Archer simply stated, in her appellate brief, that Moss was obligated to offer evidence illustrating that he complied with pertinent legal standards and did not do so. Why our opinion reversing the underlying judgment, which opinion Moss attached to his summary judgment motion, was not that evidence went unexplained. Nor did she explain why that opinion and its effect failed to establish, as a matter of law, that Moss complied with the legal standards governing his performance. And, in failing in those respects, Archer did not negate the ground as basis for entering summary judgment upon her malpractice claims. In short, Archer failed to carry her burden of proof on appeal *viz* her allegation that the trial court erred in denying her malpractice claim.

Left, however, are the claims founded upon Moss' purported divided loyalties. Furthermore, none of his summary judgment grounds can be read as attacking them. Again, as evinced by his summary judgment motion and accompanying brief, each one was directed against Archer's legal malpractice claim, as opposed to her claims sounding in breached fiduciary duties. So, because 1) we have held the allegations in Archer's live pleading to fall within the realm of different causes of action, and 2) the grounds uttered for summary judgment pertained simply to Archer's claims for malpractice, the trial court erred in granting judgment upon those causes sounding in theories other than legal malpractice.

Accordingly, we reverse that portion of the summary judgment wherein the trial court ordered that Archer take nothing upon her claim that Moss supposedly breached fiduciary duties owed her due to his pursuit of his own pecuniary interest and remand that allegation

9

and cause of action to the trial court.  In doing so, the court makes no comment as to the viability of Archer's claim.  In all other respects, the summary judgment is affirmed.


Brian Quinn
Chief Justice

Reavis, J., concurs.