**Opinion issued April 24, 2014**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-12-00365-CV

————————————

**MARCUS B. PATTERSON, INDIVIDUALLY, AS INDEPENDENT ADMINISTRATOR OF THE ESTATE OF DIANE PATTERSON, AND AS NEXT FRIEND OF DANAE PATTERSON AND DANIEL PATTERSON, AS ASSIGNEES OF BREWER LEASING, INC., Appellant**

**V.**

**HOME STATE COUNTY MUTUAL INSURANCE COMPANY, Appellee**

---

**On Appeal from the 334th District Court**
**Harris County, Texas**
**Trial Court Case No. 1035479**

---

## MEMORANDUM OPINION

Appellant, Marcus B. Patterson, individually, as independent administrator

of the Estate of Diane Patterson, and as next friend of Danae Patterson and Daniel

Patterson, challenges the trial court's summary judgment in favor of appellee, Home State County Mutual Insurance Company ("Home State"), on his *Stowers*[1] claim and his claim for breach of an insurance agreement. In two issues, Patterson contends that the case should be dismissed without prejudice to refiling and, alternatively, the trial court erred in granting Home State summary judgment.

We affirm.

## Background

In December 2006, Patterson sued Charles Hitchens, Brewer Leasing ("Brewer"), and Texas Stretch, Inc. ("Stretch") for the wrongful death of his wife, Diane Patterson. Patterson alleged that Hitchens, who was employed by Stretch and driving an eighteen-wheel truck owned by Brewer, collided into a car driven by Diane. He further alleged that Hitchens was a "known crack cocaine user," was "under the immediate influence or withdrawal effects of cocaine at the time of the collision," and Stretch and Brewer had negligently hired and supervised him.

Home State, Brewer's insurer, provided for Brewer's defense and, with Sagamore Insurance Company, provided for Hitchens's defense. Brewer's insurance contract (the "policy") with Home State had policy limits of $1,000,004 for liability and physical damage. Under the policy, anyone driving a "covered auto" with Brewer's permission was also insured. On August 21, 2007 and

---

[1] *See G.A. Stowers Furniture Co. v. Am. Indem. Co.*, 15 S.W.2d 544 (Tex. Comm'n App. 1929, holding approved).

September 20, 2007, Patterson sent Home State two letters proposing settlement. In the first letter, Patterson proposed that Home State pay the full policy limits to Daniel and Danae Patterson, Marcus and Diane's children. In the second letter, Patterson proposed that Home State pay the full policy limits to Marcus. Home State declined to accept either proposal.

Approximately four months later, Home State filed its original petition for interpleader, alleging that, in addition to Patterson, several other parties had claimed to have sustained damages in the same collision. Home State offered to deposit $1,000,004 into the registry of the court for the trial court to distribute once it determined the parties' respective rights of recovery. And it sought an order from the trial court that it "be discharged from further liability with regard to the interplead funds, and from all of its obligations pursuant to the liability coverage provided by" the policy. Patterson objected to the requested release on the ground that Home State had been "negligent in failing to properly tender the entire policy limit[]" to him after his two previous settlement proposals.

On April 16, 2008, Patterson sent Home State a third letter, offering to settle all claims against Brewer in exchange for the full policy limits. Home State declined, stating that "the disbursement of the policy proceeds" was subject to its pending interpleader action.

On October 31, 2008, the trial court entered an order allowing Home State to deposit the $1,000,004 policy limit into the registry of the court. The trial court also ordered the claimants to establish their claims and settle amongst themselves the amount of their respective rights of recovery against those funds. The trial court further ordered:

5. That HOME STATE, as a disinterested stakeholder of the interplead funds, be released and discharged from all liability to the parties herein on account of the matters relating to the described insurance proceeds, be discharged from further liability with regard to the interplead funds, and

6. This Order has no effect on, and is not intended to dispose of or absolve HOME STATE of any potential liability under the *Stowers* doctrine. The discharge of HOME STATE discharges their liability as to the $1,000,004 tendered to the registry but does not discharge, adjudicate, or affect any potential liability relating to any allegations of negligent failure to settle within the policy limits before the funds were deposited with the clerk.

As to Patterson, the trial court disbursed the policy proceeds as follows: $110,000 for the benefit of Daniel Patterson's college education, $110,000 for the benefit of Danae Patterson's college education, $10,000 to Marcus Patterson individually, and $540,004 to Marcus Patterson, as independent administrator of the estate of Diane Patterson. The remaining proceeds were disbursed to the other claimants. Shortly thereafter, Home State notified Hitchens and Brewer that it no longer had a duty to defend them in the wrongful-death action because the policy limits had been disbursed in full.

4

On the day of trial, Patterson executed a settlement agreement, releasing the owner of Brewer, individually, and Stretch from any liability in exchange for $470,000. Patterson also signed a "Covenant Not to Execute on the Judgment," in which he agreed not to execute on any judgment he obtained against Brewer, in exchange for its assignment of any claims it had against Home State. The Covenant further provided that,

4. If there is a judgment rendered in [Patterson's] favor in the Lawsuit against Brewer, [Patterson] and [his] attorneys hereby agree, and covenant, they will seek execution of such judgment solely against any and all insurance companies which issues policies to Brewer that may or may not provide coverage to Brewer for [their] claims.

5. It is expressly understood and agreed that [Patterson] will look solely to the insurance companies covering Brewer and shall never be entitled to enforce or execute on any judgment in favor of [Patterson] against Brewer or those entities identified herein.

6. Nothing in this Agreement precludes [Patterson] from any of the following, all of which [he] intend[s] to do:

. . . .

D. Collect any judgment against [Brewer] from Home State pursuant to an assignment and in enforcement of the almost 100 year old Stowers doctrine implemented by the Texas Supreme Court to protect injured people and companies from negligent insurance companies who fail to reasonably accept settlement offers within the policy limits.

Finally, the settlement included a "high-low agreement," which provided that Patterson would recover a maximum of $200 from Hitchens in the event of an adverse verdict against him and $100 if he was absolved of responsibility.

5

The trial court approved the settlement agreement and granted the motion to withdraw of Brewer's counsel. After dismissal of the jury, a bench trial proceeded against Hitchens and Brewer, although Brewer did not make an appearance. The trial court found that Hitchens was negligent; his negligence was the sole proximate cause of the collision and Diane Patterson's death; and he was, at the time of the events in question, a statutory employee of both Brewer and Stretch. And it rendered a post-answer default judgment against Brewer. The trial court further found Hitchens and Brewer jointly and severally liable in the amount of $514,110.18 in damages to Patterson, as independent administrator of Diane Patterson's estate; $3,250,433.16 in damages to Patterson, individually; and $2,158,969.56 in damages each to Daniel and Danae Patterson.

Subsequently, Patterson, having obtained an assignment of Brewer's rights against Home State as part of their settlement agreement, filed the instant suit against Home State, alleging, under the *Stowers* doctrine, that it had negligently failed to settle in the wrongful-death suit. In his petition, as amended, Patterson asserted that

> Home State negligently breached its duty to Brewer Leasing when it failed upon three different occasions to settle a claim within the policy limits. On all three occasions Home State was defending Brewer Leasing, a demand was made to settle within the stated policy limits, an ordinarily prudent insurer would have settled the claim for the amount demanded, Home State declined or rejected each demand, Home State reasonably expected that the likelihood and degree of Brewer Leasing's potential exposure to a potential judgment was in

6

excess of the policy limit, and a judgment was rendered against Brewer Leasing for an amount far in excess of the stated policy limits. Each demand was within the scope of coverage and within the policy limits. Each demand included an offer to release the insured fully. Home State's negligence proximately caused damages . . . .

Patterson also sued Home State for breach of contract, breach of the duty to defend, and gross negligence.

Home State moved for summary judgment, arguing that it was entitled to judgment as a matter of law because Brewer, as its insured, had indicated that it would not accept Patterson's settlement demands. Home State attached to its motion the deposition of George Jackson, the attorney retained to represent Brewer. Jackson testified that Brewer's in-house counsel, Mike Hays, did not "want any settlement demands to be accepted that didn't involve a release of all the Pattersons' claims against both [Brewer] and [Hitchens]." Home State further argued that it had no duty to accept Patterson's settlement demands because he did not offer to release Hitchens from liability; Patterson's August and September 2007 settlement letters did not propose releasing all of Patterson's claims; Patterson's April 16, 2008 settlement letter did not constitute an unconditional demand; and Home State had filed its interpleader action before Patterson sent the April 16, 2008 letter. Finally, Home State argued that the judgment in the wrongful-death action would not, as a matter of law, support Patterson's *Stowers* claim because the trial had not been a full adversarial proceeding. In regard to

7

Patterson's contractual claims, Home State argued that it had satisfied its duties because it had defended Brewer up until the entry of the judgment in the interpleader action.

In his response to the summary-judgment motion, Patterson asserted that he had adequately offered a full and complete release in each of his settlement demands and he was not required to release Hitchens. Patterson further asserted that there was a full adversarial trial in the wrongful-death case, although such was not required to support his *Stowers* claim.

Patterson also filed a motion to stay the summary-judgment proceeding, pending resolution of a Petition for Bill of Review he had filed in the wrongful-death suit. Patterson attached to his motion a copy of the Petition for Bill of Review, in which he argued that he had been "prevented from making a meritorious claim for punitive damages and obtaining a full recovery of actual damages" in the wrongful-death suit because Brewer had "fraudulently concealed knowledge of the massive level of cocaine in [Hitchens's] system." Patterson also alleged that Brewer had previously represented that Hitchens's drug test did not reveal the presence of cocaine in his system and Brewer had failed to provide the results of the drug test, despite several discovery requests. Patterson argued that he was therefore fraudulently induced into entering the settlement agreement and assignment of claims with Brewer. And Patterson explained that he had asked the

8

bill-of-review court to set aside its judgment in the wrongful-death suit and "nullify" the settlement agreement and assignment of claims.

After a hearing, the trial court, without specifying the grounds upon which it relied, granted summary judgment for Home State. Subsequently, the trial court denied Patterson's motion for new trial.

On appeal, Patterson filed in this Court a motion to stay or abate the appeal "because it [was] about to become moot and be dismissed." Patterson explained that the bill-of-review court had signed an "Agreed Partial Judgment," setting aside its judgment in the wrongful-death suit, as well as the parties' Covenant Not to Execute and Brewer's assignment of its claims against Home State to Patterson. Patterson asserted that the Agreed Partial Judgment "eliminate[d] all of the grounds of the Motion for Summary Judgment in this appeal" because he could no longer maintain a suit in Brewer's name and "a final judgment in excess of policy limits is an essential element of any *Stowers* claim." And he requested that, because the Agreed Partial Judgment in the bill-of-review proceeding was still interlocutory, this Court stay or abate the appeal in the instant case. We granted the motion, in part, abating the appeal for sixty days to give the parties an opportunity to develop the record and brief the issue. The abatement period expired, and we reinstated the appeal.

9

## Mootness

In his first issue, Patterson argues that "[t]his case should be dismissed without prejudice . . . because [it] is moot." Patterson further argues that "there is no live controversy in this case" because he and Brewer rescinded the assignment of claims, which rendered him without "capacity" to maintain the instant suit against Home State as Brewer's assignee, and the bill-of-review court vacated its judgment against Brewer in the wrongful-death suit, which formed the basis of the instant suit.

Because mootness is a threshold issue that implicates subject-matter jurisdiction, we address it first. *See In re H&R Block Fin. Advisors, Inc.*, 262 S.W.3d 896, 899 (Tex. App.—Houston [14th Dist.] 2008, orig. proceeding). Texas courts have no jurisdiction to render advisory opinions. TEX. CONST. art. II, § 1; *Valley Baptist Med. Ctr. v. Gonzalez*, 33 S.W.3d 821, 822 (Tex. 2000). A controversy must exist between the parties at every stage of legal proceedings, including appeals. *Williams v. Lara*, 52 S.W.3d 171, 184 (Tex. 2001); *Gen. Agents Ins. Co. of Am., Inc. v. El Naggar*, 340 S.W.3d 552, 556 (Tex. App.—Houston [14th Dist.] 2011, pet. denied). If a controversy ceases to exist—either because the issues are no longer live or the parties lack a legally cognizable interest in the outcome—the case becomes moot and the parties lose standing to maintain their claims. *Williams*, 52 S.W.3d at 184.

Here, Patterson argues that no live controversy exists in *this case* (the *Stowers* case) because of actions allegedly taken in *another case* (the bill-of-review proceeding in the wrongful-death case). However, as Home State points out, "[t]he only documents relating to these claims are attached to [Patterson's] motion to stay" and the appendices to his briefs. We may not consider the documents contained in the appendices to Patterson's briefs that are not on file in the trial court in this case and are not part of the appellate record before us. *See* TEX. R. APP. P. 34.1 ("The appellate record consists of the clerk's record and, if necessary to the appeal, the reporter's record."); *Till v. Thomas*, 10 S.W.3d 730, 733–34 (Tex. App.—Houston [1st Dist.] 1999, no pet.) (stating documents attached to brief and not appearing in appellate record cannot be considered). We must hear and determine a case on the record filed. *See Till*, 10 S.W.3d at 733.

An appellant bears the burden to provide the appellate court with a record to support his allegations on appeal. *Mallios v. Standard Ins. Co.*, 237 S.W.3d 778, 782–83 (Tex. App.—Houston [14th Dist.] 2007, pet. denied). Here, Patterson has not presented us with a record supporting his assertions.

We further note that Patterson's legal argument is unsound. Regarding the assignment of the *Stowers* claim, Patterson was in fact Brewer's assignee "when [Home State's] motion for summary judgment was filed and granted," and he filed this appeal. Where an appeal is taken from a trial court's judgment, all parties

11

whose interest in the subject matter of the proceeding could be adversely affected by a reversal or modification of the judgment are necessary parties to the appeal. *SVM Invs. v. Mexican Exps., Inc.*, 685 S.W.2d 424, 430 (Tex. App.—San Antonio 1985, no writ).

Further, the bill-of-review court's vacating of its judgment in the wrongful-death suit does not render this case moot. *See Archer v. Med. Protective Co. of Fort Wayne, Ind.*, 197 S.W.3d 422, 424 (Tex. App.—Amarillo 2006, pet. denied). In *Archer*, a plaintiff sued Archer, a doctor, for medical malpractice. *Id.* Prior to trial, the plaintiff offered to settle the litigation for a sum within the limits of Archer's insurance policy, but the insurer refused to settle. *Id.* Subsequently, a jury found Archer liable and awarded damages to the plaintiff in excess of the policy limits. *Id.* The appellate court reversed, rendering judgment absolving Archer of liability. *Id.* Nevertheless, Archer brought a *Stowers* action against her insurer, seeking damages related to its failure to settle before trial. *Id.* at 424–25. The trial court granted summary judgment for the insurer, and Archer appealed. *Id.* at 425. Archer contended that the reversal of the judgment against her in the underlying malpractice case had no effect upon her *Stowers* claim against her insurer. *Id.* The appellate court held that once Archer was absolved of liability, "that effectively insulated [her insurer] from any purported *Stowers* claim arising from its refusal to settle" before trial. *Id.* Thus, because there was no judgment

12

holding Archer liable in the underlying suit, her insurer had no liability to her under *Stowers*, and the trial court "did not err in entering a summary judgment favoring the insurer." *Id.* at 426.

Notably, in *Archer*, the vacating of the judgment in the malpractice case did not render the appeal in the *Stowers* case moot. Rather, the appellate court "affirmed" the trial court's summary judgment in the *Stowers* case in favor of the insurer because there being no judgment against Archer, there was no breach of duty by the insurer. *Id.* at 426–28. Here, as in *Archer*, even if the judgment in the wrongful-death case were to be vacated, such action would not render the judgment in favor of Home State moot. *See id.* Rather, it would provide another ground for summary judgment in favor of Home State. *See id.*

We overrule Patterson's first issue.

## Summary Judgment

In his second issue, Patterson argues that the trial court erred in granting Home State summary judgment because genuine issues of material fact exist as to his *Stowers* claim and his claims for breach of contract and the duty to defend.

### *Standard of Review*

To prevail on a summary-judgment motion, a movant has the burden of establishing that it is entitled to judgment as a matter of law and there is no genuine issue of material fact. TEX. R. CIV. P. 166a(c); *Cathey v. Booth*, 900

13

S.W.2d 339, 341 (Tex. 1995). When a defendant moves for summary judgment, it must either (1) disprove at least one essential element of the plaintiff's cause of action or (2) plead and conclusively establish each essential element of its affirmative defense, thereby defeating the plaintiff's cause of action. *Cathey*, 900 S.W.2d at 341. When deciding whether there is a disputed, material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985). Every reasonable inference must be indulged in favor of the non-movant and any doubts must be resolved in his favor. *Id.* at 549.

To prevail on a no-evidence summary-judgment motion, a movant must allege that there is no evidence of an essential element of the adverse party's cause of action or affirmative defense. TEX. R. CIV. P. 166a(i); *Fort Worth Osteopathic Hosp., Inc. v. Reese*, 148 S.W.3d 94, 99 (Tex. 2004). We review a no-evidence summary judgment under the same legal-sufficiency standard used to review a directed verdict. *Gen. Mills Rests., Inc. v. Tex. Wings, Inc.*, 12 S.W.3d 827, 832–33 (Tex. App.—Dallas 2000, no pet.). Although the non-movant is not required to marshal his proof, he must present evidence that raises a genuine issue of material fact on each of the challenged elements. TEX. R. CIV. P. 166a(i); *see Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). A no-evidence summary-judgment motion may not be granted if the non-movant brings forth more than a

14

scintilla of evidence to raise a genuine issue of material fact on the challenged elements. *See Ridgway*, 135 S.W.3d at 600. More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997). When reviewing a no-evidence summary-judgment motion, we assume that all evidence favorable to the non-movant is true and indulge every reasonable inference and resolve all doubts in favor of the non-movant. *Spradlin v. State*, 100 S.W.3d 372, 377 (Tex. App.—Houston [1st Dist.] 2002, no pet.).

### *Stowers Claim*

In Texas, insurers have a common-law duty to exercise ordinary care in the settlement of claims to protect their insureds against judgments in excess of policy limits. *See Phillips v. Bramlett*, 288 S.W.3d 876, 879 (Tex. 2009); *G.A. Stowers Furniture Co. v. Am. Indem. Co.*, 15 S.W.2d 544 (Tex. Comm'n App. 1929, holding approved). "The *Stowers* doctrine shifts the risk of an excess judgment from the insured to the insurer by subjecting an insurer to liability for the wrongful refusal to settle a claim against the insured within policy limits." *AFTCO Enters., Inc. v. Acceptance Indem. Ins. Co.*, 321 S.W.3d 65, 69 (Tex. App.—Houston [1st Dist.] 2010, pet. denied). "[S]hifting the risk of an excess judgment onto the insurer is not appropriate unless there is proof that the insurer was presented with a

15

reasonable opportunity to settle within policy limits." *Rocor Int'l, Inc. v. Nat'l Union Fire Ins. Co.*, 77 S.W.3d 253, 263 (Tex. 2002) (citing *Am. Physicians Ins. Exch. v. Garcia*, 876 S.W.2d 842, 849 (Tex. 1994)). Thus, a settlement demand triggers an insurer's *Stowers* duty to respond if: (1) the claim against the insured is within the scope of coverage; (2) the demand is within policy limits; and (3) the terms of the demand are such that an ordinary prudent insurer would accept it, considering the likelihood and degree of the insured's potential exposure to an excess judgment. *Phillips*, 288 S.W.3d at 879; *AFTCO Enters.*, 321 S.W.3d at 69. "As a threshold matter, 'a settlement demand must propose to release the insured fully in exchange for a stated sum of money.'" *Trinity Universal Ins. Co. v. Bleeker*, 966 S.W.2d 489, 491 (Tex. 1998) (quoting *Tex. Farmers Ins. Co. v. Soriano*, 881 S.W.2d 312, 314 (Tex. 1994)).

"In the context of a *Stowers* lawsuit, evidence concerning claims investigation, trial defense, and conduct during settlement negotiations is necessarily subsidiary to the ultimate issue of whether the claimant's demand was reasonable under the circumstances, such that an ordinarily prudent insurer would accept it." *Garcia*, 876 S.W.2d at 849. "Given the tactical considerations inherent in settlement negotiations, an insurer should not be held liable for failing to accept an offer when the offer's terms and scope are unclear or are the subject of dispute." *Rocor Int'l*, 77 S.W.3d at 263.

16

Home State argues that none of Patterson's three *Stowers* demands triggered its duty to settle because Patterson did not offer to release Hitchens; Patterson did not offer to release all of his claims; the April 16, 2008 offer was conditional; and Brewer itself objected to Home State's acceptance of Patterson's demands.

A settlement offer must be "unconditional" to trigger an insurer's *Stowers* duty to settle. *State Farms Lloyds Ins. Co. v. Maldonado*, 963 S.W.2d 38, 41 (Tex. 1998) (holding settlement offer not unconditional when offer made above policy limits conditioned on third party paying excess amount); *Ins. Corp. of Am. v. Webster*, 906 S.W.2d 77, 80 (Tex. App.—Houston [1st Dist.] 1995, writ denied) (holding plaintiff in *Stowers* action required to show unconditional offer to settle); *see also Danner v. Iowa Mut. Ins. Co.*, 340 F.2d 427, 429–430 (5th Cir. 1964) (holding there "must be an unconditional offer to settle before there can be a breach of the insurer's duty" and insurer not required to accept conditional offer "carrying risks of further liability").

Patterson's August 21, 2007 settlement offer read, in pertinent part, as follows:

> This letter is sent as a settlement offer on behalf of Daniel Patterson and Danae Patterson. They will both settle their minors' claims against Brewer Leasing, Inc. and its insurance carrier for the policy limits, 50% payable to Daniel Patterson and 50% payable to Danae Patterson. . . .

17

Daniel Patterson and Danae Patterson will provide Brewer Leasing Company, Inc. with a full and complete release of all claims against Brewer Leasing in exchange for the payment of the policy limits.

Home State attached to its summary-judgment motion correspondence between its attorney for Brewer, George T. Jackson, and its claims adjuster, Kenton Kaplan. In one letter, Jackson wrote,

> I went over the demand letter again, and I also spoke with personal counsel for Brewer Leasing. We both observed the fact that the letter only purports to release the claims of the children, and not the claims of the father. In addition, the release would only cover Brewer Leasing, and not the driver. As a result, the personal attorney said he was not planning to write us a letter demanding we accept the settlement offer, unless he was told to do so by his client.

In granting Home State an extension of ten additional days to consider the settlement demand, Patterson's attorney wrote, "I want to reaffirm that the settlement offer is made on behalf of Daniel Patterson and Danae Patterson. It does not include an offer of settlement from their father, Marcus Patterson, in his individual capacity." On September 14, 2007, Jackson received a letter from Michael S. Hays, Brewer's personal counsel, which read,

> It is my understanding that [Home State] is going to file a Motion to Interplead its entire policy limits into the Registry of the Court. You have asked whether or not I will agree to allow you, as counsel for Brewer, to prepare that motion. I have no objection to you preparing the motion to deposit the entire policy limits of Home State into the Registry of the court, provided Home State will continue to defend Brewer Leasing, Inc. and any other insured under the terms of the policy so long as those funds are not totally exhausted by settlement or judgments in the above styled matter.

18

Home State then declined to accept the settlement proposal.

On September 20, 2007, Patterson sent his second settlement demand letter, which read, in pertinent part, as follows:

> This letter is sent as a settlement offer on behalf of Marcus Patterson individually. He will settle all of his claims against Brewer Leasing, Inc. and its insurance carrier for the policy limits.
> . . . .
> Marcus Patterson will provide Brewer Leasing, Inc. with a full and complete release of any and all claims against Brewer Leasing and its insurance company in exchange for the payment of the policy limits.

Home State declined to accept the settlement proposal approximately two weeks later.

As stated above, a settlement offer must be both unconditional and propose to release the insured fully to trigger the insurer's *Stowers* duty to settle. *Bleeker*, 966 S.W.2d at 491; *Maldonado*, 963 S.W.2d at 41. The purpose of the *Stowers* doctrine is to shift the risk of an excess judgment onto the insurer when the insurer has an opportunity to prevent an excess judgment by settling within the applicable policy limits. *See Garcia*, 876 S.W.2d at 849. Here, Patterson's first and second settlement offers did not propose to fully release Brewer, as it would still have been liable to an excess judgment to either Marcus Patterson, his children, or his wife's estate, whichever was not named in the settlement demand. Indeed, by settling in the full amount of the policy limits with only one of the claimants, Home State could have potentially exposed Brewer to an excess judgment by one

19

of the other claimants. Accordingly, we hold that the first and second settlement offers did not trigger Home State's *Stowers* duty to settle.

Before Patterson sent his third settlement offer, Home State, on January 30, 2008, filed its interpleader action, asserting that there existed several competing claimants against Brewer and offering to deposit with the court the full policy limits for the court to distribute to the various claimants once it had determined their respective rights to damages. On April 16, 2008, Patterson sent Home State his third settlement offer, which read, in pertinent part, as follows:

> This letter is sent as a settlement offer on behalf of Marcus Patterson, individually, Marcus Patterson as administrator of Diane's estate, Marcus Patterson as next friend of both Daniel and Danae Patterson, and Larry Goffney. They will settle all of their claims against Brewer Leasing, Inc. and its insurance carrier for the policy limits.
>
> . . . .
>
> Marcus Patterson and Larry Goffney will provide Brewer Leasing, Inc. with a full, complete, total, and unconditional release of any and all claims against Brewer Leasing and its insurance company in exchange for the payment of the policy limits. They will also release any and all liens relating to them and this claim, and all funeral expenses. This also applies to any claim against Brewer Leasing by, through, or under Charles Hitchens, or based on the conduct of Mr. Hitchens in any way. But we are not releasing Mr. Hitchens, Texas Stretch, or their insurance carriers.
>
> . . . .
>
> On August 21, 2007 and September 20, 2007, I offered to release the claims of Daniel and Danae, and then Marcus, for the policy limits. Both offers were declined. This letter is on behalf of Daniel, Danae, Marcus, the estate, and Larry Goffney. If this offer is declined, we have no intention of ever again offering to settle with Brewer Leasing for policy limits.

Home State responded,

> As you are aware, [Home State] filed a petition for interpleader with the District Court of Harris County, Texas on January 22, 2008. As such, the disbursement of the policy proceeds is now the control of the Harris County District Court. As such, we are not in a position to accept your settlement offer of April 16, 2008.

Patterson's attorney responded that "the Petition in Intervention has not been granted, the money has not been tendered to the registry of the court, and [Home State] and Brewer Leasing are still in a position to non-suit the Petition for Interpleader and pay these policy limits in accordance with my request of April 16. If [Home State] wants to accept the settlement offer it may do so. If it wants to decline the offer, it may do so." The trial court granted the interpleader petition and allowed Home State to deposit the full policy limits on August 19, 2008.

Although the April 16, 2008 offer did include the release of all claims by Patterson against Brewer, it explicitly did not include Hitchens. And although Patterson now argues that the evidence does not support a contention that Hitchens was an employee of Brewer, in his original petition in the wrongful-death suit, he asserted that Hitchens was "responsible for the negligent use of the vehicle during the course and scope of his employment *and permissive use and operation of the vehicle*, for which both [Stretch and Brewer] are responsible." (Emphasis added.) In his third settlement demand to Home State, Patterson's only offer that included a release of all the parties, he noted that "Hitchens was a permissive user of the

21

vehicle or a Brewer Leasing employee." The insurance policy for Brewer expressly provided that those insured under the policy included "[a]nyone else while using with your permission a covered auto you own, hire, or borrow." Thus, Patterson's third settlement offer did not constitute an unconditional offer to fully release the insureds in exchange for a settlement. *See Bleeker*, 966 S.W.2d at 491.

Furthermore, Home State attached to its summary-judgment motion the deposition testimony of Jackson, the attorney for Brewer provided by Home State. Jackson testified that the same person owned Brewer and Stretch. And Michael Hays indicated to Jackson that "he was a personal counsel for Brewer Leasing and Texas Stretch" and "all discovery requests and contact with Texas Stretch and Brewer Leasing and those companies' employees had to go through him." Hays told Jackson that he did not want "any settlement demands to be accepted that didn't involve a release of all of the Pattersons' claims against both Brewer Leasing and Mr. Hitchens."

Accordingly, we hold that the trial court did not err in granting Home State summary judgment on the ground that Patterson did not offer Home State a full and unconditional release and, thus, his settlement offers did not trigger Home State's *Stowers* duty.

Having held that the trial court did not err in granting Home State summary judgment on the ground that Patterson's settlement demands did not trigger Home

22

State's *Stowers* duty, we need not address Patterson's remaining arguments in regard to the *Stowers* claim.

We overrule Patterson's second issue.

## Conclusion

We affirm the judgment of the trial court.


Terry Jennings
Justice

Panel consists of Justices Jennings, Brown, and Huddle.