ACCEPTED
06-15-00017-CV
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
9/8/2015 11:39:55 PM
DEBBIE AUTREY
CLERK

No. 06-15-00017-CV

IN THE COURT OF APPEALS FOR THE
SIXTH DISTRICT OF TEXAS
AT TEXARKANA

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS
9/9/2015 9:22:00 AM
DEBBIE AUTREY
Clerk

_____

BILLY FITTS and FREIDA FITTS,
Appellants,
v.
MELISSA RICHARDS-SMITH, THE LAW FIRM OF GILLAM & SMITH,
LLP, E. TODD TRACY, and THE TRACY FIRM, Attorneys at Law,
Appellees.

_____

On Appeal from the 71st District Court of Harrison County, Texas
Trial Court Cause No. 14-0150

_____

REPLY BRIEF OF APPELLANTS

LINDSEY M. RAMES
State Bar No. 24072295
RAMES LAW FIRM, P.C.
5661 Mariner Drive
Dallas, TX 75237
Telephone: 214.884.8860
Facsimile: 888.482.8894
lindsey@rameslawfirm.com

CARTER L. HAMPTON
State Bar No. 08872100
HAMPTON & ASSOCIATES, P.C.
1000 Houston Street, Fourth Floor
Fort Worth, TX 76102
Telephone: 817.877.4202
Facsimile: 817.877.4204
clhampton@hamptonlawonline.com

1

# TABLE OF CONTENTS

TABLE OF CONTENTS ......................................................................................2

INDEX OF AUTHORITIES ..............................................................................3

ARGUMENT .......................................................................................................4

A.   Appellants Did Not Waive Their Appellate Arguments...................4

B.   Appellees' Breach of Fiduciary Duty Owed To Appellants
     Supports a Separate Cause of Action................................................6

C.   Causation and Damages....................................................................15

CERTIFICATE OF COMPLIANCE ...............................................................21

CERTIFICATE OF SERVICE.........................................................................21

## INDEX OF AUTHORITIES

**Cases**

*Aiken v. Hancock*, 115 S.W.3d 26
(Tex. App.—San Antonio 2003, pet. denied) ........................................ 14

*Archer v. Medical Protective Company of Fort Wayne, Indiana*,
197 S.W.3d 422 (Tex. App.—Amarillo 2006 pet. denied) ................... 14

*D'andrea v. Epstein*, 2013 Tex. App. LEXIS 13523
(Tex. App.—Houston [14th Dist.] 2003, pet. denied) ........................... 8

*Dyer v. Shafer, Gilliland, Davis, McCollum & Ashley, Inc.*,
779 S.W.2d 474 (Tex. App.--El Paso 1989, writ denied) ..................... 6

*Frazin v. Haynes & Boone, LLP (In re Frazin)*,
2008 Bankr. LEXIS 2373 (Bankr. N.D. Tex. Sept. 23, 2008) .............. 7

*El Paso Natural Gas v. Minco Oil & Gas, Inc.,* 8 S.W.3d 309 (Tex.1999) ............. 4

*G.T. Leach Builders, LLC v. Sapphire V.P.,* 458 S.W.3d 502 (Tex. 2015) .............. 5

*Hubacek v. Ennis State Bank*, 317 S.W.2d 30 (1958) ...................... 17

*Perry v. Cohen*, 272 S.W.3d 585 (Tex. 2008) ............................ 4

*Plexchem Int'l, Inc. v. Harris Cnty. Appraisal Dist.*,
922 S.W.2d 930 (Tex. 1996) ................................................ 5

*Sacks v. Haden*, 266 S.W.3d 447 (Tex. 2008) ........................... 16

*Sealed Party v. Sealed Party*,
2006 WL 1207732 (S.D. Tex. May 4, 2006) ........................... 6

*Two Thirty Nine Joint Venture v. Joe,* 60 S.W.3d 896, 905 (Tex. App.--Dallas
2001), *rev'd in part on other grounds,* 145 S.W.3d 150 (Tex. 2004) .................. 6

*Verburgt v. Dorner,* 959 S.W.2d 615 (Tex. 1997) ...................... 4

**Rules**

Tex. Disciplinary R. Prof'l Conduct ........................................ 7, 8, 13

Tex. R. App. P. 38.1(f) ..................................................... 5

**Miscellaneous**

30 S.C. L. REV. 281 (1979) *The Code of Professional Responsibility as a Measure
of Attorney Liability in Civil Litigation* .................................. 8

109 Harv. L. Rev. 1102 (1996) *The Evidentiary Use of the Ethics Codes in Legal
Malpractice: Erasing a Double Standard* ............................... 8

Restatement (Third) of Law Governing Lawyers § 52 (2000) ................ 7

Tex. Comm. on Prof. Ethics, Op. 624 (February 2013) ................... 11

## APPELLANTS' REPLY BRIEF

## ARGUMENT

### A.  Appellants Did Not Waive Their Appellate Arguments.

Appellees broadly argue that Appellants waived most, if not all, of the arguments they bring on appeal due to inadequate briefing. Appellees fail to identify any particular statement of fact or legal argument that does not reference the record or legal precedent. Such broad assertions of waiver by the Appellees should not bar this Court from reaching the merits of this appeal and deciding whether summary judgment was proper.

"[A]ppellate briefs are to be construed reasonably, yet liberally, so that the right to appellate review is not lost by waiver." *Perry v. Cohen*, 272 S.W.3d 585, 587 (Tex. 2008) (citing *El Paso Natural Gas v. Minco Oil & Gas, Inc.,* 8 S.W.3d 309, 316 (Tex.1999)). "[A]ppellate courts should reach the merits of an appeal whenever reasonably possible." *Perry*, 272 S.W.3d at 587 (citing *Verburgt v. Dorner,* 959 S.W.2d 615, 616 (Tex. 1997)). In their brief, Appellants cite to 30-plus Texas cases, five Texas statutes, multiple legal treatises and Texas Commission on Professional Ethics Opinions. Every key fact in Appellants' Statement of Facts cites to the Clerk's Record. Construing Appellants' Brief reasonably and liberally, Appellants have not waived any argument raised on appeal for inadequate briefing.

Additionally, Appellants have not waived any of the specific arguments they bring on appeal, including their rescission argument. In *Perry v. Cohen*, the Texas Supreme Court recently held that an appellate brief did not waive argument regarding enforcement of an arbitration clause when the brief's broad assertions were arguably sufficient to encompass all supporting arguments, including the argument that a contractual deadline barred an arbitration demand was " clearly arbitrable." *G.T. Leach Builders, LLC v. Sapphire V.P.,* 458 S.W.3d 502 (Tex. 2015) (citing *Plexchem Int'l, Inc. v. Harris Cnty. Appraisal Dist.*, 922 S.W.2d 930, 930-31 (Tex. 1996) (holding that the assertion in the court of appeals that "[t]he trial court erred by granting...summary judgment" was "sufficient to preserve error and to allow argument as to all possible grounds upon which summary judgment should have been denied"); *see also* Tex. R. App. P. 38.1(f) ("The statement of an issue or point [in an appellate brief] will be treated as covering every subsidiary question that is fairly included."). Appellants' argument that they could have possibly rescinded the Kemper Release, if it did in fact release the RLI Umbrella Policy, is one of the possible grounds upon which summary judgment should have been denied. It is also covered under the umbrella argument that the Kemper Release did not extinguish Appellants' claims under the RLI Umbrella Policy.

Furthermore, in the trial court and in their Brief, Appellants produced evidence and arguments showing the following—Appellees knew Kemper was

investigating liability for the car wreck (CR 3: 583); Kemper placed liability on George Fitts, not the Toyota vehicle (CR 3: 583); Kemper tendered the policy limits under the Kemper Primary Policy to Appellants (Appellants' Brief, App. tab 3); Appellants intended to pursue the RLI Umbrella Policy; and RLI was handling a claim under the RLI Umbrella Policy (CR 3:399-402). Based on those facts, and other, Appellants argued that Appellees were negligent, that the Kemper Release did not extinguish Appellants' claims under the RLI Umbrella Policy, and that Appellees breached their fiduciary duty owed to Appellants. As such, Appellants have preserved all of these issues, and any sub-issues, for appeal.

**B.      Appellees' Breach of Fiduciary Duty Owed To Appellants Supports a Separate Cause of Action.**

In their motion for summary judgment, Tracy Appellees never argued that Appellants' breach of fiduciary claim against them constituted impermissible fracturing. Tracy Appellees also do not raise that argument on appeal. Instead, Tracy Appellees argue that a violation of the Texas Disciplinary Rules of Professional Conduct ("TDRPC") does not create an independent cause of action against an attorney. Tracy Appellees' argument is only partially-correct. Whiel the TDRPBA does not create an independent cause of action, it is admissible as evidence of the standards of conduct owed by attorneys:

> The Preamble to the Rules states that they do not define standards of civil liability for lawyers, Preamble to the Rules § 15, and several cases have so held. *See, e.g., 7 v. Shafer, Gilliland, Davis, McCollum*

6

*& Ashley, Inc.,* 779 S.W.2d 474, 479 (Tex. App.—El Paso 1989) ("[V]iolation of state bar rules does not create a private cause of action.") (cited in *The Relationship Between the Texas Disciplinary Rules of Professional Conduct and Legal Malpractice,* 43 Baylor L. Rev. 115, 116 (1991)). Nevertheless, Texas courts have used the Rules as standards for conduct in malpractice and breach of fiduciary duty cases. *Sealed Party v. Sealed Party,* No. CIV.A.H-04-2229, 2006 U.S. Dist. LEXIS 28392, 2006 WL 1207732 (S.D. Tex. May 4, 2006) (stating that Texas Disciplinary Rules "may be considered evidence and significantly inform the analysis of the scope of fiduciary duties between attorneys and their clients"); *Two Thirty Nine Joint Venture v. Joe,* 60 S.W.3d 896, 905 (Tex. App.--Dallas 2001), *rev'd in part on other grounds,* 145 S.W.3d 150 (Tex. 2004) (stating that a trier of fact can use disciplinary rules as evidence of violation of an existing duty of care for claims of legal malpractice or breach of fiduciary duty) (citing Restatement (Third) of Law Governing Lawyers § 52(2) (2000) ("Proof of a violation of a rule or statute regulating the conduct of lawyers...(c) may be considered by a trier of fact as an aid in understanding and applying the standard of...§ 49 [breach of fiduciary duty].")

*Frazin v. Haynes & Boone, LLP (In re Frazin*), 2008 Bankr. LEXIS 2373, 198-199 (Bankr. N.D. Tex. Sept. 23, 2008).

Use of the TDRPC in analyzing breaches of fiduciary duty involving conflicts of interest has been specifically discussed in *Two Thirty Nine Joint Venture v. Joe*:

Here, [Two Thirty Nine Joint Venture] and its expert used the Texas Disciplinary Rules of Professional Conduct to demonstrate the standard of care and duties of an attorney to avoid conflicts and keep the client informed. The preamble of the Disciplinary Rules states that [HN11]the rules are not to define the standards of civil liability. TEX. DISCIPLINARY R. PROF'L CONDUCT preamble P 15, *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G app. A (Vernon 1998) (TEX. STATE BAR R. art. X, § 9) ("Violation of a rule does not give rise to a private cause of action nor does it create any presumption that a legal duty to a client has been breached."). However, the preamble

does not comment on and is not inconsistent with the use of the rules as evidence of a violation of an existing duty of care, as provided for by the Restatement (Third) of the Law Governing Lawyers. *See* RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 52(2) & cmt. (f) (2000). Section 52(2) provides that a rule or statute regulating the conduct of lawyers does not give rise to an implied cause of action for professional negligence or breach of fiduciary duty, but it may be considered by a trier of fact in understanding and applying the standard of care for malpractice or determining a breach of fiduciary duty. *Id.* § 52(2). This provision reflects a common-sense approach to using the rules of conduct in a malpractice or breach of fiduciary duty action. A standard of care in a professional negligence suit does and should reflect work custom. Note, *The Evidentiary Use of the Ethics Codes in Legal Malpractice: Erasing a Double Standard*, 109 Harv. L. Rev. 1102, 1118 (1996) (citing Charles W. Wolfram, *The Code of Professional Responsibility as a Measure of Attorney Liability in Civil Litigation*, 30 S.C. L. REV. 281, 294 (1979)). Lawyers have established codes of conduct to reflect a professional consensus that no attorney shall fall below. *Id.*; *see* TEX. DISCIPLINARY R. PROF'L CONDUCT preamble P 7. Barring the use of the code and denying that the code is relevant to the duties a lawyer has to his client is not logical and would require the re-creation of a standard of care without reference to verifiable or pre-existing rules of conduct. Note, *supra*, at 1119. Therefore, the trier of fact may consider the construction of a relevant rule of professional conduct that is designed for the protection of persons in the position of the claimant as evidence of the standard of care and breach of the standard. RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 52, cmt. (f).

*Two Thirty Nine Joint Venture v. Joe,* 60 S.W.3d 896, 905 (Tex. App.—Dallas 2001), *rev'd in part on other grounds,* 145 S.W.3d 150 (Tex. 2004).

Appellants do not rely upon the TDRPC to establish an independent cause of action against Appellees for breach of fiduciary duty, nor do they need to as Texas common law already allows clients to pursue counsel for both negligence and breach of fiduciary duty. *D'andrea v. Epstein*, 2013 Tex. App. LEXIS 13523 (Tex.

8

App.—Houston [14th Dist.] 2003, pet. denied) (A lawyer who represents clients that are adverse to one another, and provides any advice on the matter that works to harm one client and benefit the other client, may be held liable for both legal malpractice and a breach of fiduciary duty).

As addressed in Appellants' Brief and in response to Appellees' motions for summary judgment, Appellants' claim for breach of fiduciary duty is distinct from the allegations that Appellees were generally negligent in their handling of Appellants' case. Appellees were aware that one set of their clients had opposing claims against another set of their clients. Smith Appellees even told Appellants that their claims against George Fitts could hurt the Toyota Litigation. (CR 3:585).

Appellees further try to argue that no conflict of interest existed because Appellants always said the car was at fault, and not George Fitts. In support of their argument, the Tracy Appellees argue that Billy Fitts said the car actually caused the accident. However, a closer review of the record shows that Billy Fitts said that the car suddenly accelerated. Nowhere does the record show where Appellees discussed possible sources of liability with Billy Fitts. It is important to note that Appellees never even informed Appellants of the possible case they had against George Fitts' estate. In arguing that Billy Fitts had the duty to inform Appellees of the case against George, Appellees are trying to cast their own duties as lawyers onto the shoulders of their clients.

Besides, Appellees cannot reasonably expect Billy Fitts to say that George Fitts caused the accident during the Toyota Litigation, especially while being deposed by Toyota or after Appellees. No, just because Appellees failed to raise that argument on their clients' behalf during their legal representation, does not mean the clients were required to raise it on their own accord during the Toyota Litigation. Appellees do not get to shift their responsibility to adequately investigation their clients' claims onto the shoulders of their clients. The entire problem still comes back to Appellees never explaining the issue to Appellants.

Importantly, Appellees have never argued or provided evidence that Appellants and/or the estate of George Fitts consented to the conflict of interest that existed between them. Instead, Appellees merely argue that no conflict of interest existed between Appellants and Appellees' other clients. Such statement itself is an admission of the failure to both identify and address the glaring conflict of interest. Appellees argue there was no conflict because Appellants did not verbally accuse George Fitts of being at fault for the car wreck during the Toyota Litigation. However, that means that if Appellants did blame George Fitts for the car wreck or if George Fitts was at fault for the accident, then there would be a conflict of interest. Even Smith Appellees admitted as much during the Toyota Litigation. (CR 3:585).

10

As Appellants argued in their response to summary judgment and in their appellate brief, Appellees were aware that Kemper was investigating liability for the car wreck, that Kemper had tendered its policy limits to Appellants, and that Appellants wanted to pursue the RLI Umbrella Policy. As such, Appellees had all the information necessary to conclude that Appellants wanted to pursue a claim under George Fitts' insurance policies, and ultimately a claim against George Fitts. That is the conflict of interest. Just because Appellants stated the car that George Fitts was driving suddenly accelerated, does not eradicate the conflict of interest nor Appellees' fiduciary duty to the Fitts family members to address and resolve the conflict.

Smith Appellees cite to Tex. Comm. on Prof. Ethics, Op. 624 (February 2013) in support of their argument that if a lawyer reasonably believe there is no significant likelihood of a future conflict developing, then there is no 1.06(b)(2) conflict. Opinion 624 is irrelevant in this case and deals with criminal defense attorneys who also serve as their clients' bail bondsmen. Citing to Opinion 599 and Rule 1.08(a), the Texas Commission on Professional Ethics held that a lawyer is not precluded from serving as the client's bail bondsmen. The Commission specifically said "Under Rule 1.06(b)(2), the answer depends upon whether, at the outset of the representation, the lawyer's representation of the client "reasonably appears" to be "adversely limited" by the lawyer's interest arising from his role as

bail bondsman." If the client could not receive a better deal than a "no contest" or "guilty" plea, then it is not a conflict for a lawyer to put in the engagement letter that the attorney is authorized to make such a plea. ("If the lawyer reasonably believes that there is no significant likelihood that the client will have an opportunity to defend the case, then a conflict would not exist. But if, at the early stage of the lawyer's engagement, it would be unreasonable to assume that a defense will likely be unavailable to the client, then a conflict of interest within the meaning of Rule 1.06(b)(2) would exist.") Opinion 624 concluded "If the lawyer also acts as the client's bail bondsman, the lawyer may represent the client under such an engagement agreement only if the lawyer reasonably believes that there is no significant likelihood that the client will have an opportunity to defend the case." However, Opinion 624 specifically goes on to say:

> Although Rule 1.06(c) generally allows representation to continue if the client consents, subparagraph (1) of Rule 1.06(c) permits the representation to continue with client consent only when "the lawyer reasonably believes the representation of each client will not be materially affected..." If the lawyer concluded at the outset of the representation that a reasonable possibility exists for the client to defend the case successfully, then the lawyer could not reasonably believe that the representation of the client will not be materially affected. Thus, if a conflict of interest under Rule 1.06 exists, the client's consent could not remedy the conflict and Rule 1.06 would prohibit the lawyer's representation of the client while the lawyer acts as the client's bail bondsman in the matter.

Even if Opinion 624 arguably applied here, Appellees' joint representation of both Appellants and George Fitts' estate could only continue with the clients'

12

informed consent and if Appellees believed the representation of each client would not be materially affected. Appellants produced summary judgment evidence proving that Appellees' representation of Appellants was materially affected and that Appellants never consented to the conflict of interest, much less informed of it.

Furthermore, simply because a conflict of interest did not exist when representation was initiated, does not mean there can never become an impermissible conflict of interest. Such an argument directly conflicts with *Tex. Disciplinary R. Prof. Conduct* 1.06(e):

> If a lawyer has accepted representation in violation of this Rule, or if multiple representation properly accepted becomes improper under this Rule, the lawyer shall promptly withdraw from one or more representations to the extent necessary for any remaining representation not to be in violation of these Rules.

Opinion 624 involved a lawyer's interest in the client's case being directly adverse to his own. In this case, it was the conflict between co-clients with claims against each other. And even if Opinion 624 arguable applies to this case, it is still not enough to let Appellees off the hook. Appellees possessed a copy of the Texas Peace Officer Crash Report before filing the Toyota Litigation placing some element of liability on George Fitts. Appellees were also aware that Kemper placed fault on George Fitts and not on the Toyota that George Fitts was driving. All of this was very early in Appellees' legal representation of Appellants. So even if Opinion 624 arguably applies in this case, it was still very early in the Toyota

Litigation—early enough to determine that a current or potential conflict of interest existed and thus required informed consent *only* if the continued representation did not materially affect the client.

Claims of breached fiduciary duties involve conflicts of interest.*v. Medical Protective Company of Fort Wayne, Indiana*, 197 S.W.3d 422 (Tex. App.—Amarillo 2006). Appellees cite to *Archer* for the argument that Appellants' breach of fiduciary duty claim constitutes impermissible fracturing. However, *Archer* actually confirms that Appellants' breach of fiduciary claim was permissibly fractured, and the trial court erred in dismissing the separate claim against Appellees. Citing to *Aiken v. Hancock*, *Archer* holds that "conflicts of interest, self-dealing, the use of confidential information, among other things" may be classified as claims of breached fiduciary duties and that it is permissible to fracture one malpractice claim into multiple causes of action. *Archer*, 197 S.W.3d at 428 (citing *Aiken v. Hancock*, 115 S.W.3d 26, 28 (Tex. App.—San Antonio 2003, pet. denied).

Appellants agree with Appellees that an attorney need not be clairvoyant. However, Appellees did not require superhuman powers when they reviewed the Texas Peace Officer Crash Report placing fault on one of their clients for the damages to their other clients. (CR 1:45). Nor did Appellees need special powers

when Appellants told them Kemper tendered its policy limits and that RLI had a pending claim under the RLI Umbrella Policy.

While an attorney has the responsibility to listen to his client, an attorney still has the duty to investigate possible sources of liability to recover his client's damages. For example, if a client tells his lawyer that he was involved in a three-car accident and the client thinks that only one of the other cars caused the accident, the lawyer still has a duty to investigate the liability of the third-vehicle. Clients do not possess the legal understanding possessed by lawyers and it would be nonsensical to place sole responsibility for the investigation of liability and defenses upon a client, who may not have more than a high-school education. If clients are responsible to determine liability in litigation and establish their claims and defense, why do we need attorneys?

## C.     Causation and Damages.

Appellees argue that since the Kemper Release extinguished Appellants' claims under the RLI Umbrella Policy, the Kemper Release negates both the causation and damages elements of Appellants' causes of action against Appellees. Tracy Appellees allege that Appellants were the sole proximate cause of their own damages when the executed the Kemper Release. Smith Appellees does not argue a sole proximate cause defense, but argue in essence that Appellants caused their

own damages when the executed the Kemper Release since the Kemper Release left Appellants with no other source of recovery for their injuries.

However, both arguments still require Appellants to prove the Kemper Release extinguished all of Appellants' claims and ability to recover under the RLI Umbrella Policy. In an attempt to do so, Appellees argue the Kemper Release included any and all claims Appellants possessed under George Fitts' RLI Umbrella Policy, even though the Kemper Release specifically only referenced the Kemper insurance company.

Appellees reference the parol evidence rule to exclude any evidence showing that the Kemper Release did not bar Appellants' claims under the RLI Umbrella Policy; though at the same time including terms not specifically mentioned in the Kemper Release—namely the RLI insurance company. Appellees attempt to use the parol evidence rule as both a shield and a sword in this case.

Appellees cite to *Sacks v. Haden* for the proposition that the Kemper Release is an unambiguous contract for which parol evidence cannot be received. However, nowhere in the Kemper Release does it state that it releases Appellants' claims under the RLI Umbrella Policy. For Appellees' affirmative defense of release to be successful, Appellees rely on RLI's statement that the Kemper Release extinguished Appellants' claims under the RLI Umbrella Policy based on the language including George Fitts. However, *Sacks* references the collateral and

consistent exception to the parol evidence rule to find that parol evidence can be used to demonstrate a prior or contemporaneous agreement that is both collateral and consistent with a binding agreement, and that does not vary or contradict the agreement's express or implied terms or obligations. *Sacks v. Haden*, 266 S.W.3d 447, 451 (Tex. 2008) citing *Hubacek v. Ennis State Bank*, 317 S.W.2d 30, 31 (1958).

As argued in response to Appellees' motions for summary judgment, Appellants produced the e-mail Kemper sent to Appellants along with the Kemper Release stating specifically that the Kemper Release "pertains only to this [Kemper] insurance policy and the settlement of this [Kemper] claim will have no affect on any claims you make against the excess insurance carrier." (Appellants' Brief, App. tab 4). This statement was contemporaneous with the submission of the Kemper Release. It does not contradict or conflict with the express or implied terms or obligations of the Kemper Release since it does not release any of Appellants' claims against the excess carrier, RLI. As stated in Appellants' Brief, it would be improper for the court in this case to rewrite the terms of the Kemper Release to include Appellants' claims under the RLI Umbrella Policy when those claims were not included Kemper Release language.

Furthermore, Appellees' own argument that the Kemper Release was unambiguously clear so as to release all of Appellants' claims under the RLI

Umbrella Policy only reinforces Appellees' negligence. Early in the Toyota Litigation, and long before the statute of limitations ran for Appellants to pursue the RLI Umbrella Policy, Appellees possessed a copy of the Kemper Release and were aware that Appellants were pursuing a claim with RLI. Even with this knowledge, Appellees now argue that the Kemper Release unambiguously and immediately released all of Appellants' claims against George Fitts under the RLI Policy. Yet, Appellees never told Appellants as such. If it is the case, then are Appellees not negligent in failing to advise their clients accordingly while they still had time to file a lawsuit to preserve the statute of limitations?

Appellees repeatedly attempt to shift the summary judgment burdens onto the shoulders of the Appellants in this case. Appellees moved for summary judgment on the theory of release, arguing that the Kemper Release negated both the causation and damages elements of Appellants causes of action. It is thus Appellees' responsibility to prove that no question of fact exists as to those elements. Appellees. It is Appellees' responsibility to prove that no fact issue exists as to whether the Kemper Release unambiguously, completely, and permanently extinguished Appellants' claims to pursue the RLI Umbrella Policy. Appellants produced summary judgment evidence showing that such a fact issue exists, whether it be through the language of the release, the contemporaneous e-mail from Kemper to Appellants to support Appellants argument that the Kemper

18

Release did not extinguish the claim under the RLI Umbrella Policy, or Appellants' alternative claim for rescission if Kemper's e-mail was false. It is also Appellees' responsibility to show that no fact issue exists as to whether the Kemper Release negates the causation and damages elements of Appellants' claims. Taking a step back to review the facts, it is important to remember RLI also told Appellants they denied the claim because the statute of limitations had lapsed. RLI's denial due to the lapsed statute of limitations is enough to create a fact issue defeating summary judgment on the causation and damages portions of Appellees' motions for summary judgment since Appellees solely argued the causation and damages elements based on the Kemper Release.

Appellees attempt to portray Appellants as greedy clients who went behind the backs of their lawyers to conceal their negotiation and settlement with Kemper. Yet, Appellees fail to acknowledge they knew of both the Kemper and RLI insurance policies; that Kemper had placed liability on George Fitts; that Appellees were fully aware of the Kemper settlement; that Appellants wanted to pursue a claim under the RLI Umbrella Policy; and that Appellants had valid claims against George Fitts. Despite knowing all this, Appellees now argue the Kemper Release immediately and permanently extinguished Appellants' claims upon execution of the release. Appellees had a copy of the executed Kemper Release, but did not say anything to Appellants. Appellees did not disclose their conflict of interest in

representing both the Appellants and George Fitts' estate. Appellees couldn't, because it would hurt the Toyota Litigation and the claims of the rest of their clients. It was not the Appellants who sougth to conceal their actions from Appellees; it was Appellees who attempted to conceal their actions from Appellants.

In conclusion, Appellants' execution of the Kemper Release did not extinguish Appellants' claims under the RLI Umbrella Policy and did not extinguish Appellees' duty to Appellants as their lawyers. Appellants produced evidence creating a fact issue as to Appellees' negligence by allowing the statute of limitations to lapse for the Appellants to pursue the RLI Umbrella Policy. Appellants also produced evidence creating a fact issue as to conflict of interest that existed between Appellants and Appellees' other clients supporting a separate breach of fiduciary duty claim against Appellees.

## PRAYER

For the reasons set forth above, and in Appellants' main brief, Appellants pray this Court resolve Appellants' issues in their favor, reverse the trial court's summary judgments, and remand the case for further proceedings. Appellants further pray that they be awarded their costs of court on appeal, and receive such other or further relief to which they are justly entitled.

Respectfully submitted,


/s/ Lindsey M. Rames
LINDSEY M. RAMES
State Bar No. 24072295
RAMES LAW FIRM, P.C.
Texas Bar No. 24072295
5661 Mariner Drive
Dallas, TX 75237
Telephone: 214.884.8860
Facsimile:  888.482.8894
Email: lindsey@rameslawfirm.com

CARTER L. HAMPTON
State Bar No. 08872100
HAMPTON & ASSOCIATES, P.C.
1000 Houston Street, Fourth Floor
Fort Worth, TX 76102
Telephone: 817.877.4202
Facsimile:  817.877.4204
Email: clhampton@hamptonlawonline.com

**ATTORNEYS FOR APPELLANTS**


**CERTIFICATE OF COMPLIANCE**

I, Lindsey M. Rames, the undersigned attorney, do hereby certify that the foregoing REPLY BRIEF OF APPELLANTS contains 4,351 words, according to the word count of the computer program used to prepare it and uses a 14-point typeface for all text in compliance with Tex. R. App. P. 9.4(i).


/s/ Lindsey M. Rames
LINDSEY M. RAMES

**CERTIFICATE OF SERVICE**

I, Lindsey M. Rames, the undersigned attorney, do hereby certify that the foregoing **REPLY BRIEF OF APPELLANTS** was served upon counsel for Appellees in the manner set forth below.

*Via eService on September 8, 2015 to:*

Wade C. Crosnoe
Thompson Coe
701 Brazos, Suite 1500
Austin, Texas 78701
*Attorney for Appellees Melissa Richards-Smith and Law Firm of Gillam & Smith, LLP*

Bruce A. Campbell
Campbell & Chadwick
4201 Spring Valley Road, Suite 1250
Dallas, TX 75244
*Attorney for Appellees E. Todd Tracy and The Tracy Firm, Attorneys at Law*

/s/ Lindsey M. Rames
LINDSEY M. RAMES